IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **SHERRY G. DANCEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:05-0768** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 2.) Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings.

The Plaintiff, Sherry G. Dancey (hereinafter referred to as "Claimant"), filed an application for DIB on May 8, 2003 (protective filing date), alleging disability as of November 15, 1998, due to bilateral carpal tunnel syndrome and degenerative arthritis. (Tr. at 15, 72, 73-75, 110.) The claim was denied initially and upon reconsideration. (Tr. at 35-38, 43-45.) On June 21, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 46.) A hearing was held on April 20, 2005, before the Honorable Charles R. Boyer. (Tr. at 323-50.) On July 7, 2005, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 15-26.) The ALJ's decision became the final decision of the Commissioner on August 30, 2005, when the Appeals Council denied

Claimant's request for review. (Tr. at 6-10.) On September 16, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical

shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of degenerative arthritis of the knees and obesity. (Tr. at 16, 25.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 20-21.) The ALJ then found that Claimant had a residual functional capacity for "work at the light exertional level with all postural activities limited to occasionally and restricted so as to avoid concentrated exposure to extreme cold, vibrations, and hazards such as machinery, heights, etc." (Tr. at 23.) Claimant had no past relevant work to which she could return. (Tr. at 23.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded that Claimant could perform jobs such as a cashier, an interviewer, and an assembler at the light exertional level, all of which existed in significant numbers in the regional and national economies. (Tr. at 24-25.) On this basis, benefits were denied. (Tr. at 25-26.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640,

3

642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on April 5, 1955, and was 50 years old at the time of the administrative hearing. (Tr. at 76, 19.) Claimant has a tenth grade education and a Generalized Equivalency Diploma. (Tr. at 15, 116, 328.) In the past, she worked as a sewing machine operator in the textile industry. (Tr. at 15.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in not determining that Claimant's bilateral carpal tunnel syndrome was a severe impairment, (2) ignored Claimant's "other severe impairments," and (3) erred in assessing Claimant's physical residual functional capacity ("RFC."). The Commissioner asserts that the ALJ's decision is supported by substantial evidence and that Claimant's arguments are without merit.

1. <u>Severe Impairments</u>

    A.   <u>Carpal Tunnel Syndrome.</u>

Claimant first argues that the ALJ erred in not finding that she had severe carpal tunnel syndrome because Dr. Sherrill opined that Claimant had reached maximum medical improvement concerning her carpal tunnel syndrome and that she should have a permanent restriction from performing repetitive work with either hand. (Pl.'s Br. at 2.) The Commissioner asserts that this argument is without merit.

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe. 20 C.F.R. §§ 404.1520(c); 416.920(c) (2004). Under current law, a severe impairment is one "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2004); <u>see also</u> 20 C.F.R. §§ 404.1521(a); 416.921(a) (2004); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b); 416.921(b) (2004). Examples of basic work activities under those sections are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations;  and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b); 416.921(b) (2004).

The ALJ thoroughly evaluated the evidence of record and summarized it in his decision. (Tr. at 17-20.) He noted that Claimant underwent bilateral carpal tunnel syndrome release surgical procedures in March and June 1998, by Scott A. Sherrill, M.D., followed by a course of physical

therapy. (Tr. at 17.) After two months of physical therapy, Claimant's range of motion and grip strength had improved. (Tr. at 17, 209-18.) A nerve conduction study performed in August 1998, revealed "significant improvement of the median nerve bilaterally, no ulnar nerve abnormalities." (Tr. at 187.) In August 1998, Claimant returned to her sewing job on a graduated basis consisting of working two hours for the first two weeks, four hours for the next two weeks, and six hours thereafter for a full day's work. (Tr. at 17, 194-95.) Dr. Sherrill observed that Claimant's complaints of pain and numbness in her fingers and hands returned after resuming repetitive work. (Tr. at 17, 194-95.) Dr. Sherrill therefore, opined that pending permanent restrictions of performing repetitive work of either hand, Claimant had reached "maximum medical improvement from her carpal tunnel syndrome [with a] permanent partial impairment rating of 15 percent of each hand." (Tr. at 17, 186.) As the Commissioner notes, the medical records indicate that Claimant did not seek further treatment for her carpal tunnel syndrome during the time period from November 1998, until April 2004. (Tr. at 194, 234.) On April 6, 2004, she asked her physician, Miriam Rogin, M.D., who was treating her for knee pain, among other things, for a note indicating that she was unable to work due to inflammation and discomfort in her knees and hands. (Tr. at 18, 234.)

On August 12, 1998, Subash V. Gajendragadkar, M.D., a state agency source, performed a consultative examination of Claimant and opined that her symptoms of carpal tunnel syndrome were of moderate to severe degree. (Tr. at 18, 222.) He further opined that Claimant's finger manipulation for writing and picking up coins was mildly impaired, but that she was able to button and unbutton clothing. (Tr. at 223.) Dr. Gajendragadkar noted that Claimant wore wrist splints and took only over-the-counter analgesic medications. (Tr. at 18, 223.) On August 20, 2003, Rodolfo Gobunsuy, M.D., another state agency source, performed a second consultative examination of Claimant. (Tr. at 19, 255-60.) Dr. Gobunsuy noted normal ranges of motion in both Claimant's wrists and observed that she had

no difficulty in wrting her name and picking up a coin. (Tr. at 19, 257, 259.) He opined that it was "unlikely" that Claimant would be efficiently employed as a seamstress. (Tr. at 19, 257.)

Claimant underwent a third consultative examination by Eugene Evans, D.O., on January 3, 2004. (Tr. at 19, 272-78.) Dr. Evans reported that Claimant had normal 5/5 grip strength in both hands, range of motion of the wrists, and gross and dexterous motion of the hands. (Tr. at 19, 273.) He noted that Claimant was able to write, pick up coins, and button clothes with both hands. (Tr. at 19, 273.) Dr. Evans opined that Claimant was able to perform certain work-related activities including handling objects. (Tr. at 274.) On May 17, 2004, Dr. Wirt, after reviewing the evidence of record, completed a Physical Residual Functional Capacity Assessment, in which he noted that Claimant's grip strength and fine manipulation of the hands were normal and did not necessitate any manipulative limitations. (Tr. at 20, 288.)

In his decision, the ALJ acknowledged that Claimant had a well-documented history of carpal tunnel syndrome, but noted that her condition had improved with surgery, physical therapy, and the elimination of repetitive activity with her hands. The ALJ's determination of Claimant's "non-severe" impairment of carpal tunnel syndrome therefore, was proper and supported by substantial evidence.

B.      Other Severe Impairments.

Claimant further argues that the ALJ erred in not finding that the degenerative changes to her back constituted a severe impairment. (Pl.'s Br. at 3.) The Commissioner asserts that the limitations resulting from Claimant's degenerative arthritis were accommodated in the ALJ's assessment of her residual functional capacity.

On August 20, 2003, Dr. Gobunsuy performed a consultative examination of Claimant at the request of the Disability Determination Service. (Tr. at 19, 255-60.) On exam, Dr. Gobunsuy noted that Claimant's back was tender at L4 to S1, which he attributed as being secondary to degenerative

7

changes. (Tr. at 257.) Claimant walked with a cane and had difficulty getting up from the sitting position without it. (Tr. at 256.) Dr. Gobunsuy further noted that Claimant advised that her lower back pain was "worsened on bending, lifting, prolonged standing, walking, cold and rainy weather." (Tr. at 255.) The pain was improved with rest and a hot shower. (Tr. at 255.) She took Indocin for her knee and lower back pain. (Tr. at 255.) On January 23, 2004, Dr. Evans observed that Claimant was able to heel-toe walk without difficulty, had ranges of motion within normal limits in all areas except for diminished flexion of the lumbar spine which was limited to only 80 degrees, and opined that Claimant's use of a cane was not necessary for ambulation. (Tr. at 272-73.) Dr. Evans noted however, that Claimant had some tenderness to palpation in the paravertebral musculature of the cervical spine. (Tr. at 273-74.) He opined that Claimant was able to perform certain work-related activities such as sitting, standing, walking, lifting, and carrying. (Tr. at 274.) With the exception of the medical reports from these two physicians, minimal complaints of back pain to Dr. Rogin, and slightly elevated rheumatoid factors, the record is void of evidence of a severe back impairment. Accordingly, the ALJ's determination of Claimant's severe impairments is supported by substantial evidence.

2. Residual Functional Capacity

Claimant next argues that in determining her RFC, the ALJ improperly gave greater weight to a consultative examiner's opinion than to his treating physician's opinion and ignored Claimant's testimony concerning his physical limitations. (Pl.'s Br. at 3-4.) The Commissioner asserts that these arguments are without merit.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the

claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2004). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections

404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2004). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2004). The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will

10

not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2004). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

As previously noted, the ALJ thoroughly considered and summarized the medical evidence of record. (Tr. at 17-20.) After consideration of all the evidence, the ALJ determined that Claimant retained the RFC for light work which would allow for occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. at 23.) The ALJ further restricted Claimant from concentrated exposure to extreme cold, vibrations, and hazards. (Tr. at 23.) Claimant first argues that the ALJ erred in relying on Dr. Wirt's May 17, 2004, Physical Residual Functional Capacity Assessment because

11

the report was made without the benefit of medical records from Claimant's treating sources. (Pl.'s Br. at 3.) The Commissioner asserts that this argument is without merit.

On May 17, 2004, Dr. Wirt completed a Physical Residual Functional Capacity Assessment which indicated that Claimant was capable of performing work at the light exertional level, with occasional postural limitations. (Tr. at 286-87.) Dr. Wirt further indicated that Claimant should avoid concentrated exposure to extreme cold, vibration, and hazards. (Tr. at 289.) It appears that Dr. Wirt considered all medical records prior to her assessment, specifically, the medical records from Claimant's treating physicians. (Tr. at 290-91.) Dr. Wirt acknowledged that Claimant had crepitation in her knees with flexion, had difficulty bending her knees, and used a cane. (Tr. at 290.) However, she noted that Claimant had no swelling, that x-rays of the knees were normal, and that she did not require the use of a cane to ambulate. (Tr. at 290-91.) Thus, Dr. Wirt properly considered the medical evidence of record in rendering her assessment of Claimant's physical limitations.

Claimant also argues that Dr. Wirt's assessment did not take into account the functional limitations established by Claimant's treating physician, Dr. Rogin, in her October 12, 2004, Physical Capacities Evaluation. (Pl's Br. at 3-4.) As the Commissioner notes, Dr. Wirt's assessment was conducted prior to Dr. Rogin's assessment. However, as discussed above, Dr. Wirt considered Dr. Rogin's treatment notes through May 2004. (Tr. at 291.) Dr. Rogin opined that Claimant was able to lift/carry ten pounds occasionally to one pound frequently, sit for 15 minutes at one time and for a total of two hours in an eight-hour workday, and stand/walk for ten minutes at one time and for a total of two hours in an eight-hour workday. (Tr. at 20, 306-07.) Dr. Rogin noted that Claimant should never climb or balance, perform gross manipulation, operate motor vehicles, or work with hazardous machinery. (Tr. at 307.) Furthermore, Claimant should rarely perform fine manipulation and bending/stooping, and occasionally push/pull and reach. (Tr. at 307.) Considering Plaintiff's testimony

and the medical evidence of record, the ALJ determined that Dr. Rogin's opinion was inconsistent with her own treatment notes and other medical records, as well as the findings of the consultative examinations, specifically those of Dr. Gajendragadkar, Dr. Gobunsuy, and Dr. Evans, who all considered Claimant's carpal tunnel syndrome and knee conditions. (Tr. at 20.) The medical evidence revealed at most only minimal reduced range of motion of Claimant's joints and near normal muscle strength. (Tr. at 255-60, 272-78.)

The ALJ further found that Claimant's statements of limitation were not credible in that they were not supported by objective clinical and diagnostic tests or laboratory reports and were inconsistent with her significant activities of daily living which included meal preparation, some household chores, shopping, and visiting with relatives. (Tr. at 22.) Accordingly, based upon the foregoing, the Court finds that the ALJ's determination that Claimant could perform work at the light exertional level with occasional postural limitations, is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings; **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such

objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: April 18, 2006.

R. Clarke VanDervort
United States Magistrate Judge